UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CYNTHIA A.,<br><br>                Plaintiff,<br>v.<br><br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | Case No. 2:24-cv-01918-TLF<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 2. Plaintiff challenges the ALJ's decision finding that plaintiff was not disabled. Dkt. 4, Complaint.

**BACKGROUND**

On April 13, 2021, plaintiff filed an application for DIB alleging a disability onset date of February 22, 2021. AR 17, 194. The application was denied initially and upon reconsideration. AR 76, 83. ALJ Henry Kramzyk conducted a hearing on December 4, 2023. AR 31-66. On January 9, 2024, ALJ Kramzyk issued an unfavorable decision finding plaintiff not disabled. AR 17-25. The Appeals Council declined the request for review and plaintiff filed this appeal. AR 1-3.

The ALJ determined plaintiff's date last insured to be December 31, 2025. AR 17. Through the date last insured plaintiff had the following severe impairments: familial adenomatous polyposis (FAP), history of j-pouch surgery, and obesity. AR 19. He determined plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, and she can never crouch, kneel, or crawl. AR 20. Based on hypotheticals posed to the Vocational Expert (V.E.) at the hearing, the ALJ concluded plaintiff could not perform her past work but could work, instead, as a cashier II, housekeeper, or marker. AR 24, 64.

## STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are in the scope of the Court's review. *Id.*

2

# DISCUSSION

## I. Plaintiff's Statements About Symptoms and Limitations

Plaintiff argues that the ALJ erred by failing to consider her need to use the bathroom on a frequent and unpredictable basis in his RFC determination. Dkt. 8 at 2. Specifically, she alleges that the ALJ erroneously discounted her subjective symptom testimony and improperly acted as a medical expert in the absence of supporting medical opinions. *Id*. The Commissioner denies that the ALJ acted as a medical expert and contends that the ALJ did not need to consider this limitation in the RFC because the ALJ properly discounted her symptom testimony. Dkt. 10 at 2.

Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons supported by substantial evidence for discrediting her testimony about her frequent bathroom usage. Dkt. 8 at 7. The Ninth Circuit has held that "[u]ltimately, the 'clear and convincing' standard requires an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). "Providing a summary of medical evidence …is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)) (emphasis in original).

### a. Plaintiff's Testimony

Plaintiff testified at her hearing that she has bowel movements up to 30 times per day. AR 47. She stated that she must eat frequent small meals to keep her symptoms manageable, eating every 1.5 to 2 hours. *Id.* She stated that between the frequent meals and bathroom trips, "it's like a constant income of food and a constant outcome of

excrement." *Id.* She is not currently taking any medications to address these symptoms. AR 48.

She stated that she takes anti-nausea medication because she experiences nausea and vomiting maybe once a week or once every two weeks. AR 48, 57. Plaintiff cannot afford health insurance, and it is not provided by her husband's employer, so she must pay out of pocket for all medical expenses. AR 58. She visited her doctor about her frequent bowel movements, and the doctor recommended she take fiber supplements and Imodium. *Id.* She stated that she tried both, but the fiber caused pain and bloating, and the Imodium did not work. *Id.* The ALJ asked if plaintiff had returned to her doctor about pursuing other treatments, but she stated that she had not been back to see this doctor because she cannot afford the $300 visit cost. *Id.*

Plaintiff testified that since her surgery and subsequent bowel issues, she must be careful when bending over or picking things up because such movements can cause her to soil herself. AR 50. She can shower and get dressed without help, complete basic household chores (laundry, dusting, sweeping, etc.), watch TV, use her phone, and read. AR 51-53.

She stated that she can go grocery shopping but must specifically plan her trips to go after she uses the bathroom and complete her shopping as quickly as possible. AR 56. Despite such preparation, she stated that she has still experienced accidents during such outings. *Id.* Plaintiff stated that she occasionally wears adult diapers overnight if she isn't feeling good or her stomach feels queasy because she will not wake up in time to make it to the bathroom. *Id.*

4

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In assessing a Plaintiff's credibility, the ALJ must determine whether Plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear and convincing reasons. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). Here, the ALJ found that plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of the symptoms "are not entirely consistent with the medical evidence and other evidence in the record." AR 22.

### b. <u>Activities of Daily Living</u>

The Ninth Circuit has repeatedly stated that "claimants should not be penalized for attempting to lead normal lives in the face of their limitations," and that "one does not need to be 'utterly incapacitated' in order to be disabled." *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). That said, activities of daily living may support an ALJ's decision to discount a plaintiff's symptom testimony if they contradict previous testimony or show that the plaintiff can spend "a substantial part of [her] day" performing activities that "meet the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ did not explain how, in his view, plaintiff's daily activities are incompatible with having up to 30 bowel movements per day. The ALJ merely made a conclusory

statement that plaintiff's statements were "not entirely consistent" with the evidence, then listed her daily activities. AR 22.

An ALJ may discount a claimant's testimony based on daily activities that contradict their testimony, but here, there is no "reasonable inference that such an inconsistency exists." *Ferguson v. O'Malley*, 95 F.4th 1194, 1203 (9th Cir. 2024). The ALJ also fails to acknowledge that, at home, plaintiff has unrestricted access to a restroom and can stop and start tasks as needed to accommodate her bathroom use. Employers typically will not tolerate frequent and unpredictable disruptions in work for bathroom breaks. *See, e.g., Niccolopaolo G. v. Colvin*, 2025 WL 99810, at *7 (S.D. Cal. Jan. 15, 2025) (finding a limitation "overall work preclusive" where the employee would need four extra five-minute bathroom breaks on top of regularly scheduled breaks); *Medellin v. Comm'r of Soc. Sec. Admin.*, 2018 WL 4659214, at *6 (D. Ariz. Sept. 28, 2018) (leaving work unexpectedly for an extended time frame to use the bathroom would not be tolerated by an employer).

The ALJ also made no specific findings relating to plaintiff's activities and their transferability to a work setting, as required by *Orn*, 495 F.3d at 639. Moreover, the Ninth Circuit has consistently held that activities such as light household chores, meal preparation, and grocery shopping do not necessarily translate to the work environment. *See, e.g., Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017); *Saunders v. Astrue*, 433 F. App'x 531, 533 (9th Cir. 2011). Accordingly, the Court concludes that substantial evidence does not support the ALJ's determination to discredit plaintiff's symptom testimony based on her daily activities.

### c. Objective Medical Evidence

The ALJ cited the lack of objective medical evidence as a reason to discount the credibility of plaintiff's testimony. Subjective symptom testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence. *Burch v. Barnhart,* 400 F.3d 676, 680 (9th Cir. 2005). Nonetheless, medical evidence remains a relevant factor in determining the severity of symptoms and their disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ discussed that the record showed only one visit to Dr. Rashidi (a gastrointestinal specialist) in June 2022, at which time plaintiff alleged having around 20 bowel movements per day. AR 22. He also notes that while plaintiff was instructed to follow up in seven weeks, she never returned. *Id.* He claims there is otherwise "no mention of any specific complaints of frequent bowel movements" and that when she visited ARNP Molly Ford in February 2022, she reported small acidic stool with no indication of frequency. *Id.*

Plaintiff actually complained to Dr. Rashidi that she was experiencing *over* 20 bowel movements daily that were acidic and causing pain and discomfort in the anal region. AR 416. And, while not quantified, at plaintiff's visit to ARNP Ford she described having "*frequent* small acidic liquid or soft stool" that burned the anal area. AR 423. At another appointment with ARNP Ford in December 2022 for unrelated issues, a review of systems was positive for "chronic intermittent diarrhea after colectomy." AR 519.

Quantification of bowel movements is not the only evidence that can support plaintiff's testimony. For example, during an examination by ARNP Ford in February 2022, the primary encounter diagnosis was functional diarrhea with skin breakdown. AR 424.

1    At the visit with Dr. Rashidi, mild skin excoriation was noted in the rectal area. AR 420.
2    These skin injuries support plaintiff's claims of frequent bowel movements. While it is true
3    that plaintiff did not complain of her diarrhea at every medical visit in the record, the ALJ
4    may not cherry-pick these instances to support his claim that there is no objective
5    evidence of plaintiff's symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1164 (9th Cir. 2014).

6    Sufficient evidence exists to support plaintiff's complaints of frequent diarrhea.
7    Even if documentation does not reveal the exact number of bowel movements plaintiff
8    experiences daily, this is not a reason to discount the entirety of her testimony regarding
9    diarrhea. *See Smartt*, 53 F.4th at 495 ("an ALJ cannot effectively render a claimant's
10   subjective symptom testimony superfluous by demanding positive objective medical
11   evidence "fully corroborat[ing]" every allegation within the subjective testimony").

12              **d.  Other Factors**

13                       i.  Failure to Report Symptoms to Providers

14   In discrediting plaintiff's testimony, the ALJ noted that plaintiff visited a
15   gastrointestinal specialist only once, in June 2022, and never returned for a follow-up visit.
16   AR 22. He also cited to visit notes in the record showing plaintiff visited her physician
17   multiple times without complaining of her diarrhea.

18   An ALJ may reasonably rely on a failure to report symptoms to health care
19   providers in discrediting a claimant's testimony. *Greger v. Barnhart*, 464 F.3d 968, 972
20   (9th Cir. 2006). Yet, in this case, plaintiff reported her symptoms on multiple occasions to
21   different providers. At her post-operative visit following her j-pouch surgery, she reported
22   to her doctor that she was having six to seven bowel movements per day. AR 316. She
23   visited Dr. Rashidi in June 2022 and complained of over 20 bowel movements daily. AR

8

416. She also visited ARNP Molly Ford in February 2022 for frequent acidic stool and, at a visit with ARNP Ford in December 2022, her review of systems was positive for "chronic intermittent diarrhea after colectomy." AR 424, 519.

Even though plaintiff did not report diarrhea to ARNP Ford at a well-woman visit in November 2021 or at a visit for a sinus infection in July 2022 (AR 426-27, 476-82), the failure to report symptoms on some occasions while reporting them on others does not constitute a clear and convincing reason to discount her testimony. *Albarran v. Comm'r of Soc. Sec. Admin.*, 2018 WL 5298390, at *6 (D. Ariz. Oct. 25, 2018); *see also Sarah A. v. Saul*, 2020 WL 13924723, at *6 (E.D. Wash. Mar. 4, 2020) (failure to report symptoms to treatment providers was not a clear and convincing reason to discredit plaintiff testimony where plaintiff reported abdominal symptoms on multiple occasions).

ii. Failure to Seek Treatment

As previously noted, the ALJ specified that plaintiff saw a gastrointestinal specialist only once and never followed up despite instructions to do so. AR 22. "Unexplained or inadequately explained failure to seek treatment" can be a valid basis on which to discredit a claimant's subjective symptom allegations. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Yet, SSR 16-3p requires the ALJ to consider possible reasons why a claimant may not comply with treatment or seek treatment consistent with the degree of their complaints before finding a claimant's symptoms inconsistent with the record evidence on this basis. SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017).

The ALJ stated that plaintiff did not have health insurance and could not afford it, but it does not appear that he considered this when evaluating her testimony. AR 22. Plaintiff testified at her hearing that she did not return to the specialist because neither

9

she nor her spouse had access to health insurance, and they could not afford the $300 that a return visit would cost. AR 58-59. A few of plaintiff's medical records refer to plaintiff's lack of insurance and being on financial assistance. AR 407, 416, 428. Plaintiff's failure to obtain further treatment is justifiable based on her inability to afford such treatment.

"It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him." *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) (quoting *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984)).

### iii. Plaintiff's Work History

The ALJ found plaintiff's claims of frequent diarrhea inconsistent with the fact that she worked at the substantial gainful activity level for years after her surgery. AR 22. An ALJ may reject allegations of disabling limitations when a claimant's impairment is of longstanding duration and did not prevent him from working in the past, and there is no evidence of significant worsening of symptoms during the relevant period. *Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988). The fact that plaintiff was able to work for a time despite her impairments fails to account for the medical evidence that shows her symptoms worsened over time, ultimately becoming debilitating.

As discussed above, plaintiff reported six to seven daily bowel movements in 2016 following surgery and reported over 20 in 2022. AR 316, 416. Although the record does not contain evidence about the precise number of bowel movements per day plaintiff was experiencing at the time she left her job and filed her application for disability benefits, the record shows the symptoms worsened over time. As such, plaintiff's past work history

was not a clear and convincing reason to discount plaintiff's subjective symptom testimony. See *Juanita K. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 2929493, at *8 (D. Or. Apr. 13, 2023).

### iv. No Documented Weight Loss

The ALJ found that plaintiff's stable weight was inconsistent with her complaints of 30 bowel movements per day and weekly nausea and vomiting, noting that her weight generally remained in the range of 180 pounds. AR 22-23. Several courts in this circuit have discounted claims of severe diarrhea where there was no corresponding weight loss. This case is distinct from others as plaintiff has not reported any loss of appetite, and in fact, attests to eating frequently (every 1.5 to 2 hours), describing her eating habits as "a constant income of food." AR 47. The Commissioner notes that the Listings for digestive disorders "make clear that malabsorption and weight loss may be a common side symptom of such impairments." Dkt. 10 at 4. But weight loss is listed as a potential symptom, not a dispositive factor.

The ALJ cited no source for his contention that frequent diarrhea must be accompanied by weight loss. "As a result, if there is medical evidence or research that suggests that severe gastrointestinal health problems are always accompanied by weight loss, then the ALJ needs to cite to that evidence to support his conclusion." *Conn v. Berryhill*, 2018 WL 5793863, at *6 (E.D. Ky. Nov. 5, 2018). The ALJ's failure to cite any support for his conclusion was error. See *Torres v. Kijakazi*, 2021 WL 5638008, at *1 (9th Cir. Dec. 1, 2021) (finding error where ALJ discounted claims of severe diarrhea based on plaintiff's stable weight but failed to identify any medical evidence suggesting weight loss was expected with IBS); *Lisa G. M. v. Kijakazi*, 2023 WL 5667870, at *2 (C.D. Cal.

1  July 13, 2023) (ALJ was not competent to make medical inference that diarrhea of the
2  severity alleged would result in weight loss). *See also Robert S. v. Comm'r of Soc. Sec.*,
3  2022 WL 1539544, at *3 (W.D.N.Y. May 16, 2022) ("Can someone's weight remain stable
4  or increase despite frequent diarrhea?... This Court has no idea. And without a medical
5  professional's assessment, neither does the ALJ").
6      In sum, the ALJ failed to provide clear and convincing reasons supported by
7  substantial evidence for dismissing plaintiff's symptom testimony.
8      II.    **Residual Functional Capacity**
9          a.   **The ALJ's RFC Was Based on an Inadequate Record**
10     Plaintiff contends that the ALJ erred because he did not utilize a medical opinion
11 to determine plaintiff's RFC and thus improperly acted as his own medical expert. Dkt. 8
12 at 2. The Commissioner argues "that no doctor assessed limitations consistent with the
13 RFC is of no moment" and that the record contained sufficient evidence to evaluate
14 plaintiff's functional limitations. Dkt. 10 at 7.
15     The record is devoid of any opinion from a medical source opining on the limitations
16 plaintiff's impairments have on her ability to work. *See generally* AR 308-536. While ALJs
17 will consider prior administrative findings made by state agency medical consultants as
18 opinions at the hearing level (*See* 20 C.F.R. §§ 404.1427, 404.1513a; SSR 96-6p, 1996
19 WL 374180, at *2 (July 2, 1996)), the agency consultant in this case found plaintiff to have
20 no severe impairments and thus assessed no limitations. AR 80.
21     The ALJ found this opinion unpersuasive, as the agency consultant, Dr. Stuart, did
22 not have the opportunity to review more recent evidence such as plaintiff's EGD. AR 23.
23 The ALJ's RFC determination was therefore solely based on his own interpretation of

1    plaintiff's testimony and the treatment notes. "The absence of a medical opinion is not necessarily fatal, but the RFC determination still must be supported by substantial evidence." *Rivera v. Berryhill,* 2017 WL 5054656, at *5 (C.D. Cal. Oct. 31, 2017).

Although it is the ALJ's responsibility to translate and incorporate medical opinions into a succinct RFC (*see Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015)), an ALJ may not render their own medical opinion or independently interpret raw medical evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (holding an ALJ erred in rejecting physicians' opinions and rendering his own medical opinion). An RFC determination need not precisely reflect an opinion, but "[b]arring a few exceptions, an ALJ must have a doctor's opinion of a claimant's functional capacity in order for there to be substantial evidence supporting the decisions." *Howell v. Kijakazi*, 2022 WL 2759090, at *7 (S.D. Cal. July 14, 2022).

Courts in the Ninth Circuit have found that an ALJ improperly acts as a medical expert when they formulate the RFC without the use of a medical source opinion assessing functional limitations. *See, e.g., Linda Lee E. v. O'Malley*, 2024 WL 4140607, at *6 (S.D. Cal. Sept. 10, 2024) (ALJ impermissibly rendered his own medical opinions where his assessed limitations lacked the support of medical opinions or exam findings); *Pulido v. Berryhill*, 2018 WL 4773109, at *8 (E.D. Cal. Oct. 2, 2018) (ALJ "clearly rendered her own medical findings" when she formulated the RFC without supporting medical opinions); *de Gutierrez v. Saul*, 2020 WL 5701019, at *5 (E.D. Cal. Sept. 24, 2020) (finding the ALJ improperly formulated the RFC on her own interpretation of the medical evidence where there were no medical opinions and the treatment records and test results did not sufficiently indicate plaintiff's functional limitations); *Mayberry v. Comm'r of*

*Soc. Sec. Admin.*, 2022 WL 658805, at *5 (D. Ariz. Jan. 28, 2022) (finding the ALJ improperly acted as a medical doctor when she evaluated exertional limitations without the benefit of a reliable medical opinion on that subject). In such circumstances, the RFC is not supported by substantial evidence. *Id*.

There are no medical source opinions in this case and the available records are sparse (potentially because plaintiff lacked health insurance and was in a low-income financial situation). The records that are available do not sufficiently indicate functional limitations caused by plaintiff's impairments or offer insight as to plaintiff's ability to work.

For the ALJ to assess functional limitations due to plaintiff's FAP and j-pouch surgery on this record, "he would have been forced to act as his own medical expert and translate the data himself, something he was not qualified to do." *Karen E. v. Berryhill*, 2019 WL 1405835, at *4 (C.D. Cal. Mar. 27, 2019) (finding the ALJ improperly determined the RFC on an inadequate record where no medical sources opined on plaintiff's limitations from her carpal tunnel syndrome).

Under these circumstances, the ALJ had a duty to develop the record further and engage the services of a consulting medical expert to evaluate the records, request medical source opinions from plaintiff's treating physicians, or order a consultative exam. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"). With the limited treatment records and lack of medical source opinions in this case, the record was inadequate. *See Duarte v. Saul*, 2020 WL 5257597, at *5 (E.D. Cal. Sept. 3, 2020)

14

(holding that the record was inadequate to allow for proper evaluation where it contained no functional assessments from any treating or examining physicians).

### b. **The Limitations Assessed by the ALJ Are Not Supported by Substantial Evidence**

Plaintiff argues that the ALJ's RFC determination is legally deficient because it fails to incorporate limitations related to plaintiff's bathroom usage. Dkt. 8 at 11. Because the record is insufficient for the ALJ to properly evaluate plaintiff's symptoms and limitations for purposes of asking hypothetical questions of the V.E., the record is insufficient to support the RFC as well.

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including…medical records, lay evidence, and 'the effects of symptoms that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The ALJ is responsible for determining a plaintiff's RFC, which is the most a claimant can do despite existing limitations. 20 C.F.R. § 404.154(a). The RFC assessment must include all the claimant's functional limitations supported by the record; "an RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 690 (9th Cir. 2009). The RFC determination must be supported by substantial evidence. *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005).

An error that is inconsequential to the non-disability determination is harmless. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). If the errors of the ALJ result in an RFC that does not include relevant work-related limitations, the RFC is deficient, and the error is not harmless. *Id.; see also Carmickle v. Comm'r. Spc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-

423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished). The ALJ committed harmful error as his RFC determination was not supported by substantial evidence.

### III. Whether the Court should reverse with a direction to award benefits.

Plaintiff requests a reversal of the agency decision and remand for a de novo hearing and new decision. Dkt. 8 at 2. However, plaintiff also argues that "as the record is fully developed and further proceedings would serve no useful purpose, remand for an immediate award of benefits is appropriate." *Id*. at 10-11.

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668. When issues remain, the Court "cannot deem the erroneously disregarded testimony to be true; rather, the court must remand for further proceedings." *Dominguez v. Colvin*, 808 F.3d 403, 409 (9th Cir. 2015); *see also, Washington v. Kijakazi,* 72 F.4th 1029, 1041-1042 (9th Cir. 2023). Only if there are no outstanding issues can the Court determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin,* 759 F.3d 995, 1020 (9th Cir. 2014).

In this case, the record is not free from important and relevant conflicts, such as lack of development in the medical evidence. Therefore, this matter should be reversed for further administrative proceedings, including a *de novo* hearing, not with a direction to award benefits.

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings. On remand, the SSA is required to hold a de novo hearing and allow plaintiff to present additional evidence. For the hearing on remand, the ALJ is required to develop the record as to plaintiff's physical limitations, such as by retaining a medical expert to review the medical record, ordering a consultative examination, or requesting medical source statements from plaintiff's treating doctors. The ALJ shall also review plaintiff's statements about symptoms and work-related limitations, in light of the developed record, and proceed through the sequential analysis as appropriate.

Dated this 30th day of June, 2025.

Theresa L. Fricke
United States Magistrate Judge